Citation Nr: 1237359 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 07-20 154 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to a rating in excess of 30 percent for right shoulder capsulitis including right upper extremity complex regional pain syndrome.

2. Entitlement to a total disability rating based on individual unemployability (TDIU) due to right shoulder capsulitis including right upper extremity complex regional pain syndrome.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

L. Kirscher Strauss, Counsel



INTRODUCTION

The Veteran served on active military service from September 1987 to July 1990.

The appeal comes before the Board of Veterans' Appeals (Board) from a November 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina, which implemented an August 2006 Board decision that awarded service connection for right shoulder capsulitis.

The Board notes that the RO initially awarded service connection for symptomatic right axillary lymphangitis status post excision of fibrous tissue from the right axilla in a February 1991 rating decision. A July 2005 rating decision awarded service connection for right upper extremity complex regional pain syndrome as secondary to his service connected lymphangitis and assigned an initial 30 percent rating effective January 8, 2001. The Veteran did not appeal that decision. However, the decision explained that the Veteran's claims for service connection for rheumatoid arthritis and right shoulder impingement remained on appeal. 

The Board denied the claim for service connection for rheumatoid arthritis in an October 2005 decision, but remanded the claim for right shoulder impingement. After receiving an expert medical opinion, the Board, in an August 2006 decision, awarded service connection for a right shoulder disability manifested by capsulitis, secondary to service-connected axillary lymphangitis with chronic venous insufficiency of the right upper extremity. A November 2006 RO decision awarded service connection for "right shoulder capsulitis proximately due to or the result of service-connected axillary lymphangitis with chronic venous insufficiency of the right upper extremity (currently evaluated 30 percent disabling as a right upper extremity complex regional pain syndrome)" and recharacterized the condition as "right shoulder capsulitis including right upper extremity complex regional pain syndrome." The decision explained that because the rating criteria for right shoulder capsulitis are the same as those for complex regional pain syndrome (see the July 2005 rating decision), the 30 percent rating was continued based on limitation of arm motion midway between the side and shoulder level. The Veteran disagreed with the evaluation. Accordingly, the issue on appeal is whether an evaluation in excess of 30 percent is warranted for right shoulder capsulitis including right upper extremity complex regional pain syndrome.

In February 2008 the Veteran withdrew his request for a hearing before RO personnel.

In February 2011, the Board remanded the increased rating claim on appeal for additional development. The development has been completed, and the case is before the Board for final review.

The Board notes that the issues have been amended to include the claim for a TDIU rating in accordance with Rice v. Shinseki, 22 Vet. App. 447 (2009). For reasons explained below, the issue of entitlement to a TDIU rating is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.

As a final preliminary matter, the Board notes that, in addition to the paper claims file, there is a paperless, electronic claims file associated with the Veteran's claim. A review of the documents in such file reveals that they are either duplicative of the evidence in the paper claims file or are irrelevant to the issue on appeal decided herein.


FINDINGS OF FACT

1. The Veteran is right-handed.

2. Right shoulder capsulitis including right upper extremity complex regional pain syndrome is manifested by abduction to 40 degrees without pain until significant pain was demonstrated at 55 degrees; it is not manifested by ankylosis, or a fibrous union or nonunion of the humerus, or loss of the head of the humerus.



CONCLUSION OF LAW

The criteria for a rating in excess of 30 percent for right shoulder capsulitis including right upper extremity complex regional pain syndrome have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. § 4.71a, Diagnostic Code 5299-5201 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act of 2000

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002 & Supp. 2011)) redefined VA's duty to assist a claimant in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2011).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, VA will attempt to obtain. 38 C.F.R. § 3.159(b). The requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). VCAA notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (in this case, the RO, to include the AMC). Id.; see also Pelegrini v. Principi, 18 Vet. App. 112 (2004). However, insufficiency in the timing or content of VCAA notice is harmless if the errors are not prejudicial to the claimant. See Conway v. Principi, 353 F.3d 1369, 1374 (Fed. Cir. 2004) (holding that VCAA notice errors are reviewed under a prejudicial error rule).

In this case, the Veteran was provided VCAA notice in June 2005 and January 2007 letters, advising him of what information and evidence is needed to substantiate his claim for an increased rating, as well as what information and evidence must be submitted by the Veteran and what information and evidence will be obtained by VA. The January 2007 letter advised him of how disability evaluations and effective dates are assigned and the type of evidence that impacts those determinations. The case was last adjudicated in March 2012.

The record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, VA and private treatment records, records from the Social Security Administration (SSA), VA examination reports and medical opinions, and lay statements.

The Board also notes that actions requested in the prior remand have been undertaken. Here, additional VA records were obtained and associated with the paper and electronic claims file, including treatment records dating since May 2008, including from the Columbia VA Medical Center; a VA right shoulder x-ray report dated August 21, 2006; and vocational rehabilitation records. An additional VA joints examination was conducted in March 2011 that was responsive to the applicable criteria for evaluating shoulder disabilities. Thus, the Board finds that the remand directives have been substantially complied with, and a decision on the merits can proceed. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)).

VA has considered and complied with the VCAA provisions discussed above. The Veteran was notified and aware of the evidence needed to substantiate his claim, 
the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. The Veteran was an active participant in the claims process by submitting evidence and argument. Thus, the Veteran was provided with a meaningful opportunity to participate in the claims process and has done so. Any error in the sequence of events or content of the notices is not shown to have affected the essential fairness of the adjudication or to cause injury to the Veteran. Therefore, any such error is harmless and does not prohibit consideration of this matter on the merits. See Conway, 353 F.3d at 1374; Dingess, 19 Vet. App. 473; see also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

Analysis

The Board has reviewed all the evidence in the Veteran's claims file and electronic Virtual VA file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history; reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; assigning the higher rating where there is a question as to which of two evaluations apply and where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of a veteran's condition. Schafrath, 1 Vet. App. at 594. However, where an increase in the level of a 
service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. The functional loss may be due to absence of part or all of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as disabled. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. § 4.40 (2011); see also 38 C.F.R. §§ 4.45, 4.59. 

The Veteran's right shoulder capsulitis including right upper extremity complex regional pain syndrome is currently rated as 30 percent disabling pursuant to 38 C.F.R. § 4.71a, Diagnostic Code 5299-5201 (2011). Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27. In this case, Diagnostic Code 5299 is used to identify disabilities of the musculoskeletal system that are not specifically listed in the schedule, but are rated by analogy to similar disabilities under the schedule. Diagnostic Code 5201 is used in rating limitation of motion of the arm. In addition, his right shoulder capsulitis is evaluated under the criteria for a major extremity because, as noted in the evidence below, he is right-handed. See 38 C.F.R. § 4.69. 

For VA purposes, normal range of motion of the shoulder is: forward flexion from 0 to 180 degrees; abduction from 0 to 180 degrees; external rotation from 0 to 90 degrees; and internal rotation from 0 to 90 degrees. 38 C.F.R. § 4.71, Plate I (2011).

Pursuant to the rating schedule, limitation of motion of the arm is evaluated as follows: at shoulder level, 20 percent (major or minor extremity); midway between side and shoulder level [abduction], 30 percent (major extremity); and to 25 degrees from side [abduction], 40 percent (major extremity). 38 C.F.R. § 4.71a, Diagnostic Code 5201.

Favorable and unfavorable ankylosis of the scapulohumeral articulation of the major extremity is evaluated as 30 percent disabling, or more. 38 C.F.R. § 4.71a, Diagnostic Code 5200.

Impairment of the humerus is rated under Diagnostic Code 5202. That provision provides that malunion of the humerus of the major shoulder and arm warrants a rating of 20 percent for moderate deformity and 30 percent for marked deformity. Recurrent dislocation of the humerus at the scapulohumeral joint of the major shoulder or arm warrants a rating of 20 percent with infrequent episodes and guarding of movement only at the shoulder level and all arm movements, and a 30 percent rating with frequent episodes and guarding of all arm movements. For the major shoulder or arm, fibrous union of the humerus warrants a 50 percent rating, nonunion of the humerus (false flail joint) warrants a 60 percent rating, and loss of the head of the humerus (flail shoulder) warrants an 80 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5202.

Impairment of the clavicle or scapula is rated under Diagnostic Code 5203. That provision provides that malunion of the clavicle or scapula, or nonunion without loose movement, warrants a 10 percent rating. Nonunion with loose movement or dislocation of the clavicle or scapula warrants a 20 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5203.

On VA lymphatic disorders examination in May 2001, the Veteran reported that he was right-handed and described his history of having a mass, which was found to be nonmalignant, excised from the right axilla in 1989 during service. He stated that he had current right shoulder pain and denied any right shoulder injuries. On range of motion examination of the right shoulder, flexion was to 145 degrees, abduction was to 150 degrees, external rotation was to 85 degrees, and internal rotation was 
to 75 degrees. Motor strength, tone, and light touch sensation were reported as normal, and there was no swelling noted in the right upper extremity. The impression of a right shoulder x-ray was erosive changes of the distal end of the clavicle and acromion compatible with inflammatory arthropathy; no degenerative change of the glenohumeral joint; mild narrowing of the acromiohumeral interval; and no fracture.

A November 2001 VA MRI of the right upper extremity did not identify impairment of the humerus involving malunion; dislocation; or fibrous union, nonunion, or loss of the humeral head.

During VA treatment in January 2002, the Veteran complained of chronic right shoulder pain. On examination, full range of motion of the right shoulder was possible on passive movement. On active range of motion, the Veteran complained of pain and was unable to fully raise his arm. During a July 2002 occupational therapy consultation for evaluation of his right hand and shoulder, the Veteran stated that he was laid off from his job in May, although he was currently working in a temporary position inspecting fuel tanks. He reported increased swelling, tenderness, and pain affecting his ability to use his right upper extremity. He indicated he was right-hand dominant. On examination, range of motion of the right upper extremity included flexion to 90 degrees and abduction to 45 degrees. During an August 2002 orthopedic evaluation, the Veteran reported constant pain in his right shoulder that increased with activity. On examination, flexion was limited to 60 degrees, abduction was to 90 degrees, external rotation was to 30 degrees, and internal rotation was to 100 degrees. During another orthopedic evaluation later in August 2002, the same physician indicated that the Veteran had restricted range of motion of the right upper extremity with motor weakness on examination.

During a follow-up orthopedic evaluation in October 2002 with a different VA physician, forward flexion was to 45 degrees, abduction was to 60 degrees, and external rotation was to 60 degrees. On physical examination, his right shoulder, arm, and forearm muscles were full and symmetrical.

During a February 2003 VA pain clinic consultation, the Veteran described his right shoulder pain as always present, but with varying intensity. On examination, there was guarding of the right upper extremity. He was started on a trial of methadone for pain. In an October 2003 VA pain clinic note, the Veteran stated that the current dose of methadone alleviated pain.

During a November 2003 VA neurological consultation for pain and swelling of the right upper extremity, particularly the right hand, the examination of the right upper extremity was noted to be very limited because the Veteran was in pain and did not allow touching of the extremity. The impression was complex regional pain syndrome, right upper extremity (reflex sympathetic dystrophy). The Veteran presented for a VA physical medicine and rehabilitation service consultation in November 2003. The impression of a right shoulder x-ray was reported as degenerative change involving the acromioclavicular joint; unremarkable 
humeral head contour, and subacromial space within normal limits.

During a private physical therapy evaluation in December 2003, right shoulder flexion and abduction were demonstrated to 65 degrees. Additional records dated through January 2004 indicated that he complained of severe increase in pain throughout the right upper extremity and did not respond well to treatment.

On VA lymphatic disorders examination in January 2004, he reported constant right shoulder pain without aggravating or relieving factors. He stated that he had not worked since December 2002 due to an inability to hold anything in his right hand or lift anything with his right arm. He indicated that he was right-handed. He also reported that he visited vocational rehabilitation in December 2003 and was found to have a condition that could not be rehabilitated. On examination, there was warmth and swelling over the right shoulder, but no erythema. He was unable to bend his arm at the shoulder due to pain.

Records from the Veteran's VA vocational rehabilitation and education services 
file indicated that he was evaluated for services, but was found to be medically infeasible for training and employment toward a vocational goal in December 2003.

During another physical medicine and rehabilitation examination in February 2004, the Veteran reported increased right shoulder pain during the past two years that was severe and present at all times with very little relief. He stated that he worked as a computer operator in a car parts manufacturing company and later in a plastic manufacturing company, but that he had to quit due to pain and dysfunction in the right upper extremity. The chief of physical medicine and rehabilitation services indicated that minimal examination was done because the Veteran exhibited marked limitation of active range of motion due to poor effort from pain. Specifically, flexion and abduction of the right shoulder were to 50 degrees. 

Although the Veteran was determined to be medically infeasible for training and employment in December 2003, he was approved in May 2004 to participate in VA vocational rehabilitation at a technical college with the occupational goal of administrative specialization and a degree in human resources. In a July 2004 VA supervision record, he stated that his medical condition had not interfered with his ability to attend school or to complete his assignments. In August 2004, he requested a computer system needed to complete his homework. In subsequent records he requested to change his major to business management because the typing required for the human resources program was aggravating his hands 
and shoulders. He was evaluated for an ergonomic keyboard to accommodate 
his condition. An October 2010 report of training indicated that the Veteran 
was scheduled to graduate in spring 2011 with an associate degree in business/administration office. 

On VA joints examination in May 2004 shortly after beginning vocational rehabilitation, the Veteran complained of increased pain with motion, particularly overhead. Right shoulder range of motion was reported as abduction to 40-50 degrees without pain, 55 to approximately 80 degrees maximum with significant pain; external rotation to 50 degrees; and internal rotation to 45 degrees. There was significant acromioclavicular joint tenderness to palpation as well as crepitation.

During an occupational therapy consultation in September 2004, the Veteran stated that he was able to use his right arm functionally until two years ago. Objective findings included active shoulder elevation to about 70 degrees and passive elevation to about 90 degrees that was "very painful."

On VA examination in June 2005, the Veteran reported persistent pain from his right shoulder all the way into his elbow, wrist, and digits. He also reported stiffness and swelling. He stated that any type of repetitive use or prolonged use with the right upper extremity caused pain. He indicated that he had continual discomfort and could not predict flare-ups. On examination, there was lymphedema present in the right upper extremity from his glenohumeral region down all the way to the tips of his digits. Right shoulder range of motion included flexion to 80 degrees without pain, with pain beginning beyond 80 degrees; abduction to 50 degrees without pain, with pain beginning beyond 50 degrees; and external and internal rotation to 30 degrees with pain. There was also some mild tenderness to palpation over the acromioclavicular joint region.

In correspondence received in September 2005, the Veteran stated that his symptoms were getting worse. He indicated that he was currently on academic probation because he could not type due to swelling in his hand and fingers. He stated that medication he was taking made it difficult to focus.

Findings from a January 2006 private MRI of the right shoulder included no displaced fracture or dislocation seen of the glenohumeral joint; the coracohumeral and coracoclavicular ligaments were intact.

In a 2006 medical opinion, a VA orthopedic physician explained that a review of the Veteran's records revealed a low grade capsulitis of the right shoulder, which would explain the overall stiffness and be a significant pain-generator.

A VA x-ray report of the right shoulder dated in August 2006 indicated that there was no evidence of recent fracture, dislocation, or other bone or joint abnormality. The impression was essentially negative shoulder.

On VA joints examination in November 2006, the Veteran reported having severe pain all the time. He did not report any notable instability. He stated that his right shoulder disability affected his prior job and his current activities of daily living because he was unable to do many things with his right hand. When asked about flare-ups, he indicated that he had constant, daily pain, but he did occasionally have flare-ups lasting approximately two hours, which were crippling and almost put him to the ground in tears. On examination, right shoulder range of motion was reported as flexion to 50 degrees, abduction to 50 degrees, and external rotation to 15 degrees. Range of motion was not additionally limited following repetitive use on examination. However, the examiner noted that repetitive use was performed very slowly, and that he was able to gain additional range of motion on passive motion testing, but the additional degrees of motion were painful. There was tenderness to palpation over the acromioclavicular joint and any motion of the glenohumeral joint resulted in pain. The Veteran also appeared to have diminished supraspinatus strength. The examining physician reviewed the August 2006 right shoulder 
x-ray and commented that the findings demonstrated a markedly hypertrophic acromioclavicular joint with an inferior osteophyte from the distal clavicle; there also appeared to be maintenance of the acromiohumeral interval although there was possibly some superior migration of the humeral head within the glenohumeral joint; and the humeral head was well-reduced.

SSA records were received in June 2007 and reflected that the Veteran was determined to be disabled for SSA purposes based on the primary diagnosis of osteoarthrosis and allied disorders and the secondary diagnosis of other disorders of the nervous system: neurological conditions. Duplicative VA treatment records were associated with the SSA file.

In July 2007, the Veteran requested and was provided with a letter for VA vocational rehabilitation training from a VA physician indicating that he was stable enough to attend school/training. During VA primary care in October 2007, right shoulder range of motion was painful, and the Veteran was unable to squeeze the physician's fingers due to chronic edema of the right hand.

On VA joints examination in February 2008, the Veteran described unrelenting right shoulder pain essentially present at all times that interfered with his ability to sleep and occurred with overhead activity. He denied chronic instability or flare-ups. Reported aggravating factors included weather change and lifting. Right shoulder range of motion was reported as flexion to 45 degrees, abduction to 45 degrees, external rotation to 40 degrees, and internal rotation to 30 degrees with severe pain throughout all ranges of motion. He was able to repetitively range the right shoulder without change in range of motion or level of pain. Therefore, the examiner concluded that range of motion was not additionally limited following repetitive use on examination. The shoulder was reported as stable upon stability testing, and there was no significant joint warmth, erythema, or effusion. 

Subsequent VA treatment records included some ongoing reports of right shoulder pain, among other physical complaints.

The Veteran was afforded another VA joints examination in March 2011. He again reported right shoulder pain present all day, every day that tended to be worse with any sort of activity, especially overhead activity. He described a feeling of instability and stated that the pain affected his ability to sleep. He reported having difficulty doing routine tasks and chores around the house due to his shoulder pain. He also stated that he was right-handed and could not use his right arm normally because of the shoulder pain. He denied flare-ups. On examination of the right shoulder, range of motion testing (rounded to the nearest five degrees) revealed flexion to 80 degrees, abduction to 70 degrees, external rotation to 30 degrees, and internal rotation to 50 degrees, all of which were with pain throughout the entire range of motion. Following repetitive use, range of motion was not additionally limited. Based on a physical examination and review of the claims file, the examining physician also indicated that there was no ankylosis of the scapulohumeral joint, there was no unusual fibrous union or nonunion, and there was no loss of the head of the humerus.

After a review of the evidence of record, the Board finds that a rating in excess of 30 percent for right shoulder capsulitis including right upper extremity complex regional pain syndrome is not warranted. Objective medical evidence reflects that the Veteran's right shoulder disability is manifested at worst by abduction to 40 degrees without pain until significant pain was demonstrated at 55 degrees on VA examination in May 2004; abduction was documented at 45 degrees (midway between the side and shoulder) or greater on other occasions. These findings are consistent with the 30 percent rating currently in effect for the Veteran's right shoulder disability.

A higher rating is not warranted because the evidence of record does not reflect arm motion limited to 25 degrees from the side, even considering the Veteran's complaints of pain and functional impairment. See DeLuca, supra. Nor does the evidence reveal ankylosis, or a fibrous union or nonunion of the humerus, or loss of the head of the humerus. Thus, the criteria for a rating in excess of 30 percent for a right shoulder disability have not been more nearly approximated.

Upon consideration of the record, the Board concludes that the medical findings on examination are of greater probative value than the Veteran's allegations regarding the severity of his right shoulder disability. Accordingly, the Board finds that the preponderance of the evidence is against the claim for a rating in excess of 30 percent for right shoulder capsulitis including right upper extremity complex regional pain syndrome.

As a final matter, the Board has also considered whether the Veteran's right shoulder disability presents an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of an extraschedular rating is warranted. See 38 C.F.R. § 3.321(b)(1) (2011); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993) ("[R]ating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical."). Here, the rating criteria reasonably describe the Veteran's disability level and symptomatology, and provide for higher ratings for additional or more severe symptomatology than is shown by the evidence. Thus, his disability picture is contemplated by the rating schedule, and the assigned schedular evaluation is, therefore, adequate. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). Consequently, referral for extraschedular consideration is not warranted.

For all the foregoing reasons, the Board finds that the most probative and credible evidence does not support the assignment of a rating in excess of 30 percent for a right shoulder disability at any point during the course of the claim. See Hart, 21 Vet. App. 505. Therefore, entitlement to an increased rating for right shoulder capsulitis including right upper extremity complex regional pain syndrome is not warranted, and the claim must be denied. 

In reaching the conclusions above, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim for a higher rating, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).


ORDER

Entitlement to a rating in excess of 30 percent for right shoulder capsulitis including right upper extremity complex regional pain syndrome is denied.


REMAND

The Board observes that a claim for a TDIU due to service-connected right shoulder capsulitis including right upper extremity complex regional pain syndrome, has been raised by the Veteran during the course of the current appeal. The Board previously referred the matter to the RO for appropriate action, but it does not appear that any action has been taken on the matter. In light of a recent case, Rice v. Shinseki, 22 Vet. App. 447 (2009), entitlement to a TDIU rating is properly considered as part of the claim for an increased rating for right shoulder capsulitis including right upper extremity complex regional pain syndrome. As such, the claim for a TDIU rating, as due to the Veteran's service-connected right shoulder disability, may be considered by the Board in tandem with his claim for a higher disability rating. Id. However, the Board observes that further development is required prior to adjudicating the claim of entitlement to a TDIU.

The Board notes that the Veteran has not been provided with VCAA notice of the requirements for a TDIU claim, nor has relevant employment information been obtained. Thus, on remand, the AMC/RO should provide corrective notice and request that the appropriate TDIU form be completed.

Ongoing relevant medical records should also be obtained. See 38 U.S.C.A. § 5103A(c) (West 2002); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim).

Accordingly, the case is REMANDED for the following action:

1. Send the Veteran proper VCAA notice under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) that advises him about what is needed to substantiate a claim for a TDIU rating. In addition, ask the Veteran to complete a VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability, to obtain relevant employment information.

2. Obtain relevant ongoing treatment records from the VA Medical Center in Columbia, South Carolina dating since March 2011.

3. After the development requested above, and any additional development deemed necessary, has been completed to the extent possible, the record should be reviewed and the claim for entitlement to TDIU adjudicated. If the benefit sought on appeal is denied, then the Veteran and his representative should be furnished with a supplemental statement of the case that includes the regulations governing TDIU claims and be given the opportunity to respond thereto. The case should then be returned to the Board for further appellate consideration, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).




______________________________________________
K. A. BANFIELD
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs