Citation Nr: 1438774 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 08-22 472 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Pittsburgh, Pennsylvania


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Michael W. Zimecki, Attorney


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

G. Jackson, Counsel


INTRODUCTION

The Veteran served on active duty from July 1961 to July 1965.

This matter initially came before the Board of Veterans' Appeals (Board) from February 2007 and April 2008 rating decisions issued by the RO. In March 2010, the Veteran testified during a hearing at the RO before the undersigned Veterans Law Judge (VLJ); a transcript of that hearing is of record. Although the Veteran's current claim was originally broken into 3 claims of entitlement to service connection for various psychiatric disorders (depression, anxiety, and PTSD), the Board, pursuant to Clemons v. Shinseki, 23 Vet. App. 1 (2009), recharacterized the issue as stated on the title page and remanded the claim in June 2010 for additional development of the record. That development having been completed, the case has been returned to the Board for the purpose of appellate review. 

Finally, the Board notes that, in addition to the paper claims file, there is a Virtual VA electronic claims file associated with the Veteran's claim. A review of the documents in the electronic file reveals that they are either duplicative of the evidence in the paper claims file or are irrelevant to the issues on appeal.


FINDINGS OF FACT

1. The Veteran does not have PTSD.

2. The most probative medical opinion of record establishes that the Veteran's acquired psychiatric disorder did not onset due to disease or injury sustained in service. 




CONCLUSION OF LAW

An acquired psychiatric disorder, to include PTSD was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1101, 1110, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act of 2000

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002 & Supp. 2013); Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012, Pub. L. No. 112-154, §§ 504, 505, 126 Stat. 1165, 1191-93; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013). The VCAA applies to the instant claim. 

VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

The duty to notify in this case was satisfied by letters sent to the Veteran in September 2006 and February 2008. The claim was last adjudicated in October 2013.

The record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Specifically, the information and evidence that have been associated with the claims file include the Veteran's service treatment records, VA treatment records and examination reports.

Further, the Board is aware that this appeal was, most recently, remanded by the Board in June 2010. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that a Court or Board remand confers upon the appellant the right to compliance with that order). That remand requested that the RO schedule the Veteran for additional VA examination to evaluate the etiology of the Veteran's claimed acquired psychiatric disorder. This development was completed by way of a June 2011 VA examination. Accordingly, the Board finds that there has been substantial compliance with its previous remand and it may proceed to adjudication of this appeal. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

In summary, the Veteran was notified and aware of the evidence needed to substantiate his claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. He was an active participant in the claims process submitting evidence and argument and presenting for a VA examination. Thus, he was provided with a meaningful opportunity to participate in the claims process and has done so. Any error in the sequence of events or content of the notices is not shown to have any effect on the case or to cause injury to the Veteran. Therefore, any such error is harmless and does not prohibit consideration of this matter on the merits. See ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

Additionally, the Board notes that, during the March 2010 Board hearing, the undersigned VLJ identified the issue on appeal and asked questions designed to elicit relevant evidence. These actions provided an opportunity for the Veteran and his representative to introduce material evidence and pertinent arguments, in compliance with 38 C.F.R. § 3.103(c)(2) and consistent with the duty to assist. See Bryant v. Shinseki, 23 Vet. App. 488, 492 (2010).

Laws and Regulations

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). 

Establishing service connection generally requires (1) evidence of a current disability; (2) evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); 38 C.F.R. § 3.303. 

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b).

Analysis

As an initial matter, the Board notes that the Veteran did not engage in combat with the enemy. Therefore, the combat provisions of 38 U.S.C.A. § 1154 (West 2002) are not applicable. 

There are particular requirements for establishing entitlement to service connection for PTSD in 38 C.F.R. § 3.304(f) that are separate from those for establishing service connection generally. Arzio v. Shinseki, 602 F.3d 1343, 1347 (Fed. Cir. 2010). Those requirements are: (1) a diagnosis of PTSD in accordance with 38 C.F.R. § 4.125; (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a causal nexus between current symptomatology and the specific claimed in- service stressor. 38 C.F.R. § 3.304(f). If a PTSD claim is based on in-service personal assault, evidence from sources other than the veteran's service records may corroborate the veteran's account of the stressor incident. 38 C.F.R. § 3.304(f)(5).

The Veteran contends that he has an acquired psychiatric disorder, to include PTSD related to an in service personal assault. His service treatment records demonstrate that he was treated for a mandible fracture following a December 1961 physical assault; he asserts that the assault also contained a sexual component. Thus, the evidence of record clearly demonstrates that a personal assault occurred, although the sexual component of the assault has not been corroborated. However, the Board notes that the service treatment records contain no complaints or documentation of an acquired psychiatric disorder.

The Board acknowledges that the Veteran was afforded VA examination in October 2007 to address the nature and etiology of his acquired psychiatric disorder. The psychologist determined that the most appropriate diagnosis was dysthymic disorder. The psychologist then concluded that although the Veteran had reported "a chronic history of a sad mood which he date[d] back to his military service," "the [V]eteran [had] not receive[d] any psychiatric treatment while in the military and did not seek any psychiatric treatment until approximately 7 years ago when he began taking antidepressants." Therefore, "the Veteran's dysthymic disorder [was] unrelated to his military service." 

The Veteran was afforded another VA examination in June 2009. The psychologist continued the diagnosis of dysthymic disorder, and again noted that it was unrelated to service, but did not provide a rationale for this conclusion. 

In the prior remand, the Board found that the June 2009 opinion was inadequate because an adequate rationale was not provided. The Board also found the October 2007 opinion inadequate because the psychologist did not consider the Veteran's lay testimony in determining that the dysthymic disorder was not related to service. Accordingly, the October 2007and June 209 VA opinions of etiology will not be considered.

In the June 2011 VA examination report, the psychologist documented the Veteran's contentions of having acquired psychiatric disorder due to the personal assault he suffered in December 1961 (as documented in the service treatment records). The Veteran also reported another incident in service where he was groped by a fellow soldier during the night while he slept. He also reported a worsening alcohol dependence that began in 1961 or 1962. He stated that while he was stationed on the USS Forrestal, he would drink approximately 6-8 beers to the point of intoxication at every port. Reportedly, his ship went into port approximately every 10 days. On one particular occasion in Italy, he was very intoxicated and resisted the urging of shore patrol to return to his ship. He wound up running through a local store front window and causing damage. The Veteran believes this incident derailed his Navy career.

The psychologist noted review of the Veteran's personnel record showed that he was always recommended for promotions and for re-enlistment; they did not show any significant changes in his functioning after the Veteran's assault incident in December 1961. The psychologist did note that there was a slight decrease in military behavior noted in May 1964 and May 1965. However, given the Veteran's self-report of excessive drinking at that time, the psychologist determined that it was very likely that the Veteran's decrease in scores at this time was due to the difficulties created by his alcohol use.

The psychologist recorded the Veteran's occupational history subsequent to his period of service. The Veteran denied any time lost from work or decreased in productivity due to psychiatric symptoms. Socially, the Veteran had been married twice. His first marriage lasted approximately 11 years (1966-1977). He had gotten his ex-wife pregnant and he believed marrying her was the right thing to do. They divorced due to his quick temper and resultant fights thereof. He remarried a year later and he and his wife were still married. He reported that he continued to have a short temper that continued to result in fights. He had taken in his mother-in-law and took care of her for many years. He and his wife have 2 children and he reported that he had a good relationship with his kids. He kept in touch with his 2 sisters that lived nearby and talked to his brother who lived in Utah on the phone occasionally. He has friends but only speaks with them and sees them on rare occasions. He reported that his social life was better when he was younger because he was able to go out more. He reported that as he got older and focused on his family more his social life declined. He described his current social life as "average." He did not report any impairment in social functioning due to psychiatric symptoms, except for some irritability directed at his wife. However, the psychologist noted again that given the Veteran's history of excessive alcohol use, the irritability with his wife could easily be attributable to his alcohol use. The psychologist noted that there was no specific or direct way to link the Veteran's current irritability with any one specific event from his past. And, there was no evidence of any social impairments or sexual difficulties that one might expect in a person who was traumatized by a personal assault.

The Veteran reported that he smoked 3 packs of cigarettes per day but denied drug use. Prior to 2004 (about 40 years), he reported that he drank approximately 6 to 8 beers and 2 to 4 shots of whiskey daily. However in 2004 he was diagnosed with rheumatoid arthritis and decreased his drinking to 1 to 2 beers once or twice a week. The psychologist concluded that the Veteran's previous excessive use of alcohol likely created difficulties with instability of mood, irritability, depression and sleep disturbance, all of which were directly related to his alcohol use.

The psychologist documented review of the Veteran's psychiatric history. The Veteran had a negative PTSD screen in 2006. He had been diagnosed with major depressive disorder but had never been diagnosed with PTSD. He had participated in stress management relaxation groups from March 2008 to September 2008 but discontinued therapy after that and had not resumed any treatment since that time. The psychologist noted that the Veteran had never sought any specific treatment related to his in-service physical assault. He had never been hospitalized for psychiatric care. He reported that citalopram helped with his mood and irritability.

The psychologist noted the physical assault that occurred in service; however, he found no evidence of a sexual assault component of that incident, especially given the Veteran's vague memory of the possible sexual assault during the incident. Given the Veteran could not remember if he was forced to perform a sexual act and no sexual act was performed on him, the psychologist concluded the event did not qualify as a military sexual trauma. Additionally, the psychologist found that given the Veteran's behavior after the physical assault (not reporting for treatment until a day later) and his appearance and demeanor in the emergency room (no distress), the event did not meet the criterion A for diagnosis of PTSD. To that end, the incident on the USS Forrestal also did not meet the criterion A for a diagnosis of PTSD.

The psychologist found that the Veteran was not reporting adequate symptoms to meet a diagnosis of PTSD and he had not ever received a diagnosis of PTSD from any healthcare provider. Regarding re-experiencing the event, The Veteran reported some dreams about the event but denied having nightmares related thereto. Additionally, while he reported having some daytime memories, there was no evidence that the memories were distressing enough to cause any impairment in his functioning. He did not describe any avoidance or numbing symptoms and he did not describe any increased arousal symptoms, other than difficulties with sleep and irritability which could be directly attributed to the Veteran's chronic and longstanding alcohol use. In sum, there were no present symptoms that could be specifically tied to the Veteran's assault in the service, other than an occasional memory and dreams that he still had about the event.

The Veteran worked 4 to 5 hours per week at his own construction/remodeling business. He occasionally shot pool or worked out at the YMCA (2-3 times per week to 2-3 times per month), depending on his level of depression. He reported that he mostly sat in his recliner (due to back trouble) and either worked or thought about work. He occasionally surfed the internet. He cut his grass with his riding lawnmower and emptied the trash.

On mental status examination, the Axis I diagnosis was dysthymic disorder, unrelated to military service. With regard to the claimed PTSD, the psychologist explained that the Veteran did not describe a traumatic stressor that met Criterion A for a diagnosis of PTSD. He also did not describe or evidence significant symptoms of PTSD. His symptoms have not affected or impaired any important areas of functioning. Though he did report some occasional memories and reminders about the personal assault, he did not describe a full constellation of symptoms that would be required for a diagnosis of PTSD (a consistent finding in the record). Additionally, the psychologist noted that the Veteran has never sought treatment specifically for his claimed symptoms of PTSD.

With regard to any other acquired psychiatric disorder, the psychologist found that the Veteran's current depressive symptoms and feelings of sadness were attributed to his age and declining health. The psychologist noted that the Veteran was not attributing his current depressive symptoms to his in-service personal assault. The Veteran reported having both good times and bad times during his lifetime and did not have any symptoms serious enough to cause him to seek or require psychiatric treatment until recently. The psychologist explained that was an indication that any past depressive feelings were likely transient and expected reactions to psychosocial stressors in his life and also the direct effects of alcohols. The psychologist concluded that all available evidence indicated that the Veteran did not suffer from any clinically significant level of depressive symptoms either during service or within the first year after service and his more recent reports of depression were unrelated to military service both in terms of their timing and the content of his depressive ruminations.

On this record, the Board finds that service connection for an acquired psychiatric disorder, to include PTSD is not warranted. To that end, regardless of the Veteran's claimed stressors, his claim for PTSD must be denied because the preponderance of the evidence reflects that he does not have a diagnosis of PTSD in accordance with 38 C.F.R. § 4.125. Specifically, the psychologist who conducted the June 2011 VA examination concluded that the Veteran did not meet criteria for a diagnosis of PTSD. The psychologist explained that the Veteran did not describe a traumatic stressor that met Criterion A for a diagnosis of PTSD. He also did not describe or evidence significant symptoms of PTSD. His symptoms have not affected or impaired any important areas of functioning. Further, though he did report some occasional memories and reminders about the personal assault, he did not describe a full constellation of symptoms that would be required for a diagnosis of PTSD (a consistent finding in the record).

As to the Veteran's hearing testimony and lay statements, while veterans are competent to testify as to some matters of diagnosis and etiology, the question of whether a Veteran has a diagnosis of PTSD is the type of medical issue as to an internal, non-observable process as to which lay testimony is not competent. See Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) ("It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant"); 38 C.F.R. § 3.304(f) (specifically requiring medical evidence diagnosing PTSD). Consequently, the Veteran's statements as to whether he has a diagnosis of PTSD are not competent. 

Clemons also stands for the proposition that a claimant without medical expertise cannot be expected to precisely delineate the diagnosis of his mental illness. Id at 4-5. In this case, in the June 2011 VA psychiatric examination, the psychologist did diagnose dysthymic disorder. However, similarly, his claim for an acquired psychiatric disorder other than PTSD must be denied also because the psychologist determined that the Veteran's current acquired psychiatric disorder was attributed to his age and declining health not his in-service personal assault. The psychologist noted that the Veteran did not have any symptoms serious enough to cause him to seek or require psychiatric treatment until recently and explained that was an indication that any past depressive feelings were likely transient and expected reactions to psychosocial stressors in his life and also the direct effects of alcohol. In sum, the psychologist found that the Veteran's more recent reports of psychiatric disorder were unrelated to military service both in terms of their timing and the content of his depressive ruminations.

As a psychosis was not diagnosed, the provisions concerning chronic disabilities are not for application. 38 U.S.C.A. § 1101; 38 C.F.R. §§ 3.303(b), 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed.Cir. 2013).

The only other evidence of record supporting this claim is the various general lay assertions. In this case, the Board finds that the Veteran was competent to state that his acquired psychiatric disorder was a result of in-service injury (physical assault). See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). The Board, however, retains the discretion to make credibility determinations and otherwise weigh the evidence submitted, including lay evidence. Buchanan v. Nicolson, 451 F.3d 1331 (Fed. Cir. 2006). Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")); see also Barr v. Nicholson, 21 Vet. App. 303 (2007). Given that the record shows that the Veteran did suffer personal assault in December 1961, his assertions are credible. However, in this case, the Board finds the opinion of the VA psychologist in the June 2011 VA examination report to be more probative. The VA psychologist is a medical professional who reviewed the claims file, considered the reported history and performed examination. The psychologist used her expertise in reviewing the facts of this case and determined that the Veteran did not meet the criteria for a diagnosis of PTSD and the current acquired psychiatric disorder other than PTSD was unrelated to incident of the Veteran's period of service. It is clear that the psychologist fully understood the basis for the claim yet still determined, after reviewing the facts of the case, that the Veteran's current acquired psychiatric disorder was related to causes other than service.

For the foregoing reasons, the Board finds that the claim of entitlement to service connection for an acquired psychiatric disorder, to include PTSD must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claims, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Entitlement to service connection for an acquired psychiatric disorder, to include PTSD is denied.



____________________________________________
CHERYL L. MASON
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs