Citation Nr: 1714080 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 04-26 386 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
 in San Juan, the Commonwealth of Puerto Rico


THE ISSUE

Entitlement to service connection for an acquired psychiatric disability, to include as secondary to service-connected adductors myositis, left/adductors tenosynovitis. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

N. Laroche, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from October 1979 to June 1985 

This appeal to the Board of Veterans' Appeals (Board) arose from a June 2003 rating decision in which the RO denied service connection for anxiety features, to include as secondary to adductors myositis, left/adductors tenosynovitis. The Veteran filed a notice of disagreement (NOD) in November 2003. A statement of the case (SOC) was issued in May 2004, and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) in July 2004. 

In January 2011, the Veteran testified during a hearing before the undersigned Veterans Law Judge at the RO; a transcript of that hearing is of record.

In June 2006, December 2007, September 2010, June 2011, August 2012, May 2013, and October 2013, the Board remanded the matter on appeal to the RO via the Appeals Management Center (AMC) in Washington, D.C., for further development. 

In February 2015, the Board denied the Veteran's claim. Thereafter, the Veteran appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In September 2015, the Court granted the Joint Motion for Remand (Joint Motion, or JMR) filed by representatives for both parties, vacating the Board's decision as to the denial of service connection for an acquired psychiatric disorder and remanding the matter to the Board for further proceedings consistent with the JMR. 

In December 2015, pursuant to the September 2015 JMR, the Board remanded the Veteran's claim for a VA addendum opinion to discuss the etiology of the Veteran's psychiatric disability. After completing the requested development, the agency of original jurisdiction (AOJ) continued to deny the claim (as reflected in an October 2016 supplemental SOC (SSOC)), and returned this matter to the Board for further appellate consideration.


While the Veteran previously had a paper claims file, his appeal is now being processed utilizing the paperless, electronic Veterans Benefits Management System (VBMS) and Virtual VA claims processing systems. 


FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate the claim on appeal have been accomplished. 

2. Although service treatment records document complaints assessed as situational stress, no chronic acquired psychiatric disability was shown in service or for many years thereafter, and competent, probative medical opinion evidence indicates that there is no medical relationship, or nexus, between any such disability and either the Veteran's service, or his service-connected adductors myositis, left/adductors tenosynovitis. 


CONCLUSION OF LAW

The criteria for service connection for an acquired psychiatric disorder, to include as secondary to service-connected adductors myositis, left/adductors tenosynovitis, are not met. 38 U.S.C.A. §§ 1131, 5103, 513A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.310 (2016). 



REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100 , 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014)) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2014).

After a substantially complete application for benefits is received, notice requirements under the VCAA essentially require VA to notify a claimant of any evidence that is necessary to substantiate the claim, as well as the evidence that VA will attempt to obtain and which evidence he or she is responsible for providing. See, e.g. Pelegrini v. Principi, 18 Vet App. 112 (2004; Quartuccio v. Principi, 16 Vet. App. 183 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103 (a) and 38 C.F.R. § 3.159 (b)).

VA's notice requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between the Veteran's service (or service-connected disability) and the disability, degree of disability, and effective date of the disability. Dingess/Hartment v. Nicholson, 19 Vet. App. 473 (2006).

VCAA-compliant notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the AOJ. Id., Pelegrini, 18 Vet. App. at 112. See also Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). However, the VCAA notice requirements may, nonetheless, be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Id.

In a March 2003 pre-rating letter, the AOJ provided notice to the Veteran explaining what information and evidence must be submitted by the appellant, and what information and evidence would be obtained by VA. Post rating, a June 2006 letter provided the Veteran with general information pertaining to VA's assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations, consistent with Dingess/Hartman. However, the Veteran is not prejudiced by the timing of such notice, inasmuch as, following provision of the notice, the Veteran's claim was readjudicated in various SSOCs, each followed by a period for response. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as in an statement of the case (SOC) or SSOC, is sufficient to cure a timing defect). 

The record also reflects that, consistent with applicable duty-to-assist provisions, VA has made reasonable efforts to develop the claim herein decided, to include obtaining or assisting in obtaining all relevant records and other evidence pertinent to this matter. Pertinent medical evidence associated with the claims file consists of service records; private and VA treatment records; and VA examinations and opinions. Also of record and considered in connection with the claims is the transcript of the Board's hearing, as well as statements from the Veteran and his representative, on his behalf. The Board finds that no further AOJ action on the claim, prior to appellate consideration, is required. 

As for the January 2011 Board hearing, the Veteran was provided an opportunity to orally set forth his contentions before the undersigned. In Bryant v. Shinseki, the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103 (c)(2) (2015) requires a DRO or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) to fully explain the issues and (2) to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). Here, the Board finds that, consistent with Bryant, there has been substantial compliance with the duties set forth in 38 C.F.R. § 3.103 (c)(2), and that the hearing was legally sufficient.

During the January 2011 hearing, the undersigned identified the claims on appeal, to include the claim herein decided, and information was elicited regarding the nature of the Veteran's psychiatric disability and treatment, and why he believed the disability is related to service or service-connected disability. Therefore, not only was the issue "explained...in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim" were also fully explained. Id. at 497. Although the undersigned did not explicitly suggest the submission of any specific additional evidence, on these facts, such omission was harmless, inasmuch as, following the hearing, the Board sought further development of the claim on multiple occasions, and additional evidence was subsequently added to the claims file.

As noted above, most recently, in December 2015, the Board again sought further development of the claim, pursuant to the February 2015 JMR. A remand by the Board confers upon the Veteran, as a matter of law, the right to compliance with the remand instructions and imposes upon the VA a concomitant duty to ensure compliance with the terms of the remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 

In the February 2015 JMR, the parties found that the June 2013 VA medical opinion failed to address aggravation. Therefore, in the December 2015 remand, the Board directed the AOJ to undertake appropriate action to obtain any outstanding VA and private treatment records, request a VA addendum opinion from the June 2013 VA examiner, and thereafter readjudicate the claim. In December 2015, the AOJ sent a letter to the Veteran requesting information in respect to his medical treatment records. The Veteran responded with an Authorization for Release for private medical treatment records; thereafter, updated VA and private treatment records were associated with the claims file. In September 2016, the June 2013 VA examiner provided an addendum opinion addressing secondary service connection. In an October 2016 supplemental SOC (SSOC), the AOJ adjudicated the claim based on additional evidence received. 

Accordingly, the Board finds that the AOJ has substantially complied with the Board's remand directives, such that no further action in this regard is required. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall, 11 Vet. App. 268, where the Board's remand instructions were substantially complied with); see also D'Aries v. Peake, 22 Vet. App. 97, 105-06 (2008) (finding that the substantial compliance, rather than strict compliance, with the terms of a Board engagement letter requesting a medical opinion is required). 

In summary, the duties imposed by the VCAA have been considered and satisfied. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with the claim. Hence, there is no prejudice to the Veteran in the Board proceeding to a decision on the claim on appeal, at this juncture. See Mayfield, 20 Vet. App. at 543 (rejecting the argument that the Board lacks authority to consider harmless error). See also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998). 

II. Service Connection

The Veteran contends that he has experienced nervousness since leaving service. Additionally, he reports that his service-connected adductors myositis, left/adductors tenosynovitis prevents him from being active, which causes psychiatric symptoms of depression and anxiety. See Veteran's March 2013 statement. These assertions suggest both direct and secondary theories of entitlement. 

Service connection may be established for a disability resulting from personal injury suffered or disease contracted in the line of duty, or from aggravation of a preexisting injury suffered or disease contracted in the line of duty. See 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303. Service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury that was incurred or aggravated in service. 38 C.F.R. § 3.303(d). 

Certain chronic diseases, to include psychoses, shall be presumed to have been incurred in service if manifested to a compensable degree within a prescribed period post service (10 percent and one year, respectively, psychoses), even though there is no evidence of such diseases during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309(a). 

With chronic disease shown as such in service (or within the presumptive period under 38 C.F.R. § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributed to intercurrent causes. Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is questioned. When the fact of chronicity in service is not adequately supported, then the showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303(b). 

The United States Court of Appeals for the Federal Circuit has clarified that the provisions of 38 C.F.R. § 3.303(b), pertaining to the award of service connection on the ward of service connection on the basis of continuity of symptomatology, apply to chronic diseases as defined in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Under 38 C.F.R. § 3.310(a), service connection may also be granted for a disability that is proximately due to or the result of a service-connected disease or injury. That regulation permits service connection not only for a disability caused by a service-connected disability, but for the degree of disability resulting from aggravation of a nonservice-connected disability by a service-connected disability. See Allen v. Brown, 7 Vet. App. 439, 448 (1995). 

In adjudicating a claim for VA benefits, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 C.F.R. § 3.102. See also 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet App. 49, 53-56 (1990). 

With respect to the Veteran's military service, service treatment records dated in March 1981 note the Veteran's complaints of nervousness for several weeks with trouble sleeping at night and paranoid tendencies with periods of crying. The Veteran reported thoughts of killing someone, then himself. In May 1981, the Veteran reported that he was nervous and could not sleep. The examiner assessed the Veteran to have situational stress. A September 1985 Report of Medical Examination, at the Veteran's separation from service, reported normal clinical psychological evaluations. In a September 1985 Report of Medical History, the Veteran reported no depression or excessive worry, and no nervous trouble of any sort. 

A July 1986 VA examination report noted that the Veteran was nervous since leaving service. In service, he reported homesickness, homicidal ideation, aggressiveness, and rage episodes. The Veteran was diagnosed with atypical impulse control disorder. 

VA treatment records dated in February 2001 reflect depression and anxiety. In May 2002, the Veteran reported depressive symptoms and paranoid ideation. The examiner concluded that there was a possibility of some cognitive limitation; however, it could not be definitively assessed. In August 2003, the Veteran was prescribed medication for anxiety and depression. He was diagnosed with depression, not otherwise specified (NOS). 

A May 2003 VA examination report documents the Veteran's anxious mood and constricted affect. The examiner noted a diagnosis of no gross psychiatric disorder with anxiety features at Axis I and borderline and antisocial personality disorder at Axis II. The examiner noted that the Veteran manifested aggressively during service, claimed insomnia and anxiety due to his work schedule, and had problems with his superiors in service.

VA treatment records dated in November 2004 document poor sleep, constant worry, negative thoughts with aggressive content towards self, and easy irritability. In August 2005, the Veteran was diagnosed with depression. September 2006 private psychiatric records document a posttraumatic stress disorder (PTSD) diagnosis. 

VA treatment records dated in September 2010 reflect that the Veteran was anxious and had poor sleep. He was diagnosed with major depression, recurrent. Episodes of anxiety, anger, and sleep disturbance were also noted. Private treatment records dated in February 2011 document symptoms of major depression, severe, and ruled out PTSD. The Veteran reported that he started suffering from depression, extreme anxiety, insomnia, and nightmares after he was discharged. The examiner noted that the Veteran had behavioral changes and intrusive, recurring, and distressing recollections of traumatic events. July 2011 VA treatment records indicate anxiety, poor sleep, and mood swings. At that time, the Veteran was diagnosed with depressive disorder with anxiety. In October 2011, the Veteran reported that he was under stress and irritable. 

A December 2011 VA examination report noted that the Veteran had a diagnosis of depressive disorder, NOS, with symptoms of trouble sleeping, dysphoric mood, irritability, depressed mood, and somatizations. The examiner noted that the Veteran had occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. The examiner noted the Veteran started psychiatric care eight years prior. 

VA treatment records dated in May 2012 indicate that the Veteran felt anxiety, and depression was noted. The Veteran was noted to be suffering from anxiety disorder and major depressive order. A follow-up with the psychiatric department ruled out PTSD. In August 2012, the Veteran was diagnosed with depressive disorder with anxiety, and bipolar II disorder was ruled out. Private treatment records dated in September 2012 note major depression with depressed mood, decreased sleep, insomnia, irritability, and anxiety. 

VA treatment records dated in January 2013 document the Veteran's frequent arguments with his family and problems at work. He reported trouble controlling his temper. He was diagnosed with bipolar disorder. In May 2013, it was noted that the Veteran completed a partial hospital program with a diagnosis of bipolar disorder. 

In a June 2013 disability benefit questionnaire (DBQ), the examiner opined that it was not likely that the Veteran's psychiatric disability had its clinical onset during active service or was related to any in-service disease, event, or injury. The examiner noted that the Veteran was diagnosed with situational stress in March 1981; however, the examiner noted that the Veteran did not seek treatment for psychiatric disabilities until 2003. The examiner opined that his service-connected adductors myositis, left/adductors tenosynovitis preceded his neuropsychiatric condition. 

An April 2014 DBQ completed by a private physician documents the Veteran's only diagnosis of major depression. The Veteran was noted to suffer from major depressive symptoms and chronic pain that affected his functioning. The Veteran reported anxiety, mood, and irritability problems that started in the military. He reported intrusive, recurring, and distressing recollection of times he was in the Army. The examiner noted the Veteran to have irritability, impulsivity, and hostility, however, the examiner did not provide an opinion as to whether there was an etiological relationship between the Veteran's pain and depressive symptoms. 

A September 2016 VA addendum opinion documents the Veteran's diagnosis of unspecified depressive disorder (also known as depression, NOS, bipolar disorder II). After a review of the claims file, the VA examiner opined that the Veteran's psychiatric disability was not related, due to, or associated/secondary to his adductors myositis, left/adductors tenosynovitis. The examiner noted that the Veteran did not seek psychiatric treatment until almost 18 years after his service-connected adductors myositis, left/adductors tenosynovitis. The examiner stated that there was no relation between the Veteran's service-connected disability and his psychiatric disability diagnosed in 2003. The examiner also opined that the Veteran's unspecified depressive disorder (also known as depression, NOS, bipolar disorder II) was not aggravated (worsened beyond natural progression) by the Veteran's service-connected adductors myositis, left/adductors tenosynovitis. 

The Board finds that the Veteran has a current acquired psychiatric disability. The Board also acknowledges the Veteran's in-service complaints of nervousness, trouble sleeping, and diagnosis of situational stress as well as the Veteran's service-connected adductors myositis, left/adductors tenosynovitis. The remaining question is whether there is a medical nexus between the Veteran's current psychiatric disability and his military service and/or service-connected condition. In this regard, there are several medical opinions of record. 

The May 2003 VA examiner noted that the Veteran's characterological condition was his most prominent neuropsychiatric condition and was not considered to be secondary to his back condition. 

The December 2011 VA examiner diagnosed the Veteran with depressive disorder, NOS and alcohol dependence. The examiner opined that the Veteran's psychiatric disability did not have its onset during his military service, nor was it caused by or aggravated by service. The examiner noted that there was no evidence of psychiatric complaints, findings, or treatment prior to military service or within one year of discharge from service. However, the Veteran's service treatment records clearly documented symptoms, as discussed above, which was the basis for the Board's August 2012 remand. Nevertheless, the examiner noted that the Veteran sought psychiatric care in 2003, 18 years after military discharge and the events that led to his service-connected conditions. The examiner concluded that a temporal relationship between the Veteran's diagnosed depressive disorder and his military service, as well as his service-connected physical condition, was not established.

In September 2012, a VA examiner opined that the Veteran's diagnosed psychiatric disability did not have onset in, or was not otherwise medically related to service, to include the in-service complaints of nervousness. The examiner also opined that the Veteran's diagnosed psychiatric disability was not aggravated by the Veteran's service-connected adductors myositis, left/adductors tenosynovitis. The examiner reasoned that this was because the Veteran's September 1985 separation examination gave no history of psychiatric complaints and noted the Veteran was evaluated as psychiatrically normal. The examiner noted there was no evidence of psychiatric complaint, findings, or treatment within one year after discharge from service. The Veteran was noted to have sought psychiatric care in 2003, 18 years after his military discharge and the events that led to his service-connected disability. The examiner concluded that the Veteran's neuropsychiatric condition bears no relationship chronologically to his military service or his subsequent physical condition that developed during the same. As the Board remanded the claim in May 2013 for outstanding records, the September 2012 examiner did not offer an opinion based on consideration of all relevant evidence. 

A June 2013 VA examiner opined that the Veteran's psychiatric condition was less likely than not incurred in or caused by his military service. The examiner indicated that although a diagnosis of situational stress was given in March 1981, the Veteran did not pursue further treatment until 2003, 18 years after separation from service. The examiner noted that a temporal relationship between the depressive disorder and the Veteran's service was not established. Additionally, the examiner opined that the Veteran's psychiatric condition was less likely than not proximately due to, or the result of, the Veteran's service-connected condition, citing that a temporal relationship was not established, as the Veteran sought treatment 18 years after his military service and the events that led to his service-connected condition, which was present prior to the Veteran seeking such treatment. The examiner concluded that the Veteran's neuropsychiatric condition bears no relationship chronologically whatsoever to his military service, or to the subsequent physical condition that developed therefrom. 

In September 2016, the VA examiner noted the Veteran's diagnosis of unspecified depressive disorder (also known as depression, NOS, bipolar disorder II). After a review of the claims file, the VA examiner opined that the Veteran's psychiatric disability was not related, due to, or associated/secondary to his adductors myositis, left/adductors tenosynovitis. The examiner noted that the Veteran did not seek psychiatric treatment until almost 18 years after his service-connected adductors myositis, left/adductors tenosynovitis. The examiner stated that there was no relation between the Veteran's service-connected disability and his psychiatric disability diagnosed in 2003. The examiner concluded that the Veteran's psychiatric disability and service-connected adductors myositis, left/adductors tenosynovitis are different in time frames, different in etiology, different pathophysiology, and different anatomical systems with no relation to the other. He further explained that the Veteran's psychiatric disability symptoms have shown the same clinical course of those individuals without service-connected adductors myositis, left/adductors tenosynovitis. Therefore, he opined that the Veteran's psychiatric disorder was not aggravated (worsened beyond the natural progression) because his service-connected adductors myositis, left/adductors tenosynovitis had not changed or altered the usual depressive clinical course of his psychiatric disorder. 

Considering the evidence in light of governing legal authority, the Board finds that the preponderance of the evidence weighs against a finding of service connection on any basis. 

As noted above, service treatment records document complaints assessed as situational stress. However, no chronic acquired psychiatric disability was shown in service or for many years thereafter. While the Veteran indicates he has experienced psychiatric symptoms since service, no such symptoms were complained of, or noted, at the time of September 1985 separation examination. Furthermore, the first documented post-service evidence of psychiatric symptoms was not until 2003, when the Veteran sought psychiatric treatment-18 years after leaving service. Such period is well outside of the one-year period, post discharge, for establishing service connection for a psychosis on a presumptive basis . See 38 C.F.R. §§ 3.307, 3.309. The Board further notes that the passage of many years between discharge from active service and medical documentation of a claimed disability is a factor that tends to weigh against a claim for service connection. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000); Shaw v. Principi, 3 Vet. App. 365 (1992). 

While the Veteran is certainly competent to assert matters within his personal knowledge, to include as to the nature, onset, and continuity of his psychiatric symptoms (see, e.g., Charles v. Principi, 16 Vet. App. 370 (2002), here, the Veteran's normal examination at the time of discharge from service coupled with the lack of any evidence of psychiatric symptoms until 2003 preponderates against awarding service connection on the basis of chronicity and continuity of symptomatology. See 38 C.F.R. § 3.303(b). 

Furthermore, the competent, probative opinion evidence of record does not support a finding that the Veteran's current psychiatric disability is etiologically related to his military service. Rather, as noted above, the September 2012 and June 2013 VA opinions weigh against a finding of such a relationship. The June 2013 opinion, in particular, was proffered after review of the Veteran's complete record, and fully considered whether the Veteran's currently diagnosed psychiatric disability was due to his military service, to include the complaints and treatment noted in his service treatment records, and is supported by adequate rationale. This opinion-which the Board accepts as probative evidence on the question of medical nexus to service (see e.g., Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) and Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007)-along with the other medical opinions of record to address this point-indicates that that no such medical nexus between current disability and service, to include symptoms noted therein, exists. 

Likewise, the competent, probative opinion evidence on the question of whether the Veteran's psychiatric disability is secondary to his service-connected adductors myositis, left/adductors tenosynovitis similarly weighs against the claim. The most persuasive medical opinion of record to address this question-the September 2016 VA medical opinion-essentially ruled out a secondary relationship on either a causation or aggravation basis. This opinion, which clearly was based on review of the claims file and consideration of the Veteran's documented history and assertions, and supported by stated rationale, is accepted as probative evidence on the question of secondary service connection. Id. 

Significantly, there is no contrary medical opinion to support a finding of either direct or secondary service connection for current psychiatric disability. As noted above, in an April 2014 DBQ, a private examiner indicated that the Veteran's depressive symptoms and chronic pain affected his functioning. While the examiner related the psychiatric symptoms and pain to functional impairment, an opinion as to whether there was an etiological relationship between the Veteran's pain and depressive symptoms was not provided. 

In addition to the medical evidence discussed above, in adjudicating this claim, the Board had considered the assertions proffered by the Veteran as well as those advanced by his representative, on his behalf, have been considered. To the extent that lay assertions purport to establish medical etiology, however, such assertions provide no basis for allowance of the claim. As indicated above, this claim turns on whether there exists a medical relationship between the Veteran's current psychiatric disability and either his military service or his service-connected adductors myositis, left/adductors tenosynovitis. Such are matters within the province of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134, 137-38 (1994). As neither the Veteran nor his representative is shown to be other than a layperson without the appropriate training and expertise, neither is competent to render a probative (i.e., persuasive) opinion as to the complex medical matters upon which this claim turns. 

While it is in error to categorically reject layperson nexus evidence as incompetent, the Board may consider the facts of particular case to determine the layperson's competence. See Davidson v. Nicholson, 581 F.3d 1313 (Fed Cir. 2009). One factor to consider is the complexity of the question to be determined. Jandreau v. Nicholson, 492 F.3d 1372, 1377, n.4 (Fed. Circ. 2007) (providing that a layperson would be competent to diagnose a simple condition such as a broken leg but not to diagnose a form of cancer). Here, the matter of whether the Veteran's current psychiatric disability is medically related to either his military service or service-connected disability are not matters within the realm of knowledge of a layperson; rather, such are complex medical questions, the resolution of which requires appropriate education, training, and expertise. Id. Hence, the lay assertions in this regard have no probative value. 

For all the foregoing reasons, the Board finds that the claim for service connection for an acquired psychiatric disorder, to include as secondary to service-connected adductors myositis, left/adductors tenosynovitis, must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56..



ORDER

Service connection for an acquired psychiatric disorder, to include as secondary to service-connected adductors myositis, left/adductors tenosynovitis, is denied. 



____________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs